IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARA ALYSE PATE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-08-249 |
| | § | |
| MICHAEL ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court in this social security appeal is Defendant's Motion for Summary Judgment (Document No. 10), and Plaintiff's cross Motion for Summary Judgment (Document No. 11). After considering the cross motions for summary judgment and additional briefing, the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner of the Social Security Administration is AFFIRMED.

### I.   Introduction

Plaintiff Mara Alyse Pate ("Pate") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for

supplemental security income benefits. Pate argues that substantial evidence does not support the Administrative Law Judge's ("ALJ") decision, that the ALJ failed to follow the dictates of 20 C.F.R. Part 404, Subpart P, Appendix 2, section 201.00(h), and that the ALJ denied her due process when he limited her ability to present testimony at the hearing. The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's decision, that the ALJ properly applied the applicable regulations, including section 201.00(h), and that the ALJ offered Pate a fair opportunity to present evidence and testimony at the administrative hearing.

## II.     Administrative Proceedings

On November 9, 2005, two months shy of her 18th birthday, Pate's mother filed on Pate's behalf an application for supplemental security income benefits under Title XVI, alleging that Pate had been disabled since May 2002, as a result of a seizure disorder and a learning disability. On January 9, 2006, during the pendency of the application, Pate turned 18. The Social Security Administration denied Pate's application at the initial and reconsideration stages. After that, Pate requested a hearing before an ALJ. The Social Security Administration granted her request and the ALJ, Clifford Leinberger, held a hearing on April 26, 2007, at which Pate's claims were considered *de novo*. (Tr. 250-299). On May 23, 2007, the ALJ issued his decision finding that Pate was not disabled either before or after she turned 18, and that she was therefore not entitled to supplemental security income benefits. (Tr. 11-27).

Pate sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in

reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest.  20 C.F.R. § 404.970; 20 C.F.R. § 416.1470.  After considering Pate's contentions in light of the applicable regulations and evidence, the Appeals Council concluded that there was no basis for review. (Tr. 3-5). The ALJ's decision thus became final.

Pate has filed a timely appeal of the ALJ's decision.  42 U.S.C. § 405(g).  The parties have filed cross motions for summary judgment (Document Nos. 10 & 11).  The appeal is now ripe for ruling.

### III.     Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence.  42 U.S.C.§ 405(g).  While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against

the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

**IV.     Availability of Supplemental Security Income Benefits**

Supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq, are available to aged, blind and disabled individuals, including minors who are disabled. See 42 U.S.C. §§ 1382, 1382c. Under 42 U.S.C. § 1382c(a)(3)(A), an individual aged 18 or over,

> shall be considered disabled [for purposes of supplemental security income benefits] if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

Such an individual, however, will only be found to be under a disability if:

4

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 13872c(a)(3)(B). For individuals under the age of 18, supplemental security income benefits are available if the individual is disabled – meaning for those under 18 years of age that:

> [the] individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C).

An individual seeking supplemental security income benefits, either for themselves at 18 years of age or older, or on behalf of a minor (under the age of 18), has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988); *Tate ex rel. Tate v. Commissioner*, 368 F.Supp.2d 661, 663-664 (E.D. Mich. 2005); *Bean v. Astrue*, 2009 W.L. 3335026 at *19 (M.D. Tenn. 2009).

### A. Individuals Under the Age of 18

In evaluating whether a child (under the age of 18) is entitled to supplemental security income benefits under Title XVI, a three-step sequential analysis is employed. *See* 20 C.F.R. § 416.924(a) - (d). First, it must be determined whether the child is engaged in substantial gainful activity. If so, a finding of not disabled must be made; if not, it must next be determined if the child's impairment or combination of impairments is severe. A child will not be found to have a severe impairment if it constitutes only a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations.." 20 C.F.R. § 416.924(c). If the child has a severe impairment

5

it must finally be determined whether the impairment meets, equals or is functionally equal in severity to a listed impairment. 20 C.F.R. §§ 416.924(d), 416.926, 416.926a. Whether the impairment equals a listed impairment is determined by considering the medical evidence in connection with the requirements of the applicable listing. 20 C.F.R. § 416.926. If the impairment does not actually equal a listed impairment, it must be determined whether the impairment or combination of impairments "functionally" equals the requirements of any listed impairment. 20 C.F.R. § 416.926a. For this functional equivalence inquiry, it must be considered whether the child's impairment(s) results in a marked limitation in two, or an extreme limitation in one, of the following "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health a physical well-being. 20 C.F.R. § 416.926a(b). A "marked" limitation is one that interferes seriously with a child's ability to "independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(d)(2). An "extreme" limitation is one that "interferes very seriously with [one's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(d)(3).

**B.     Individuals 18 Years of Age and Older**

For individuals 18 years of age or older seeking supplemental security income benefits, a five-step sequential process to used to determine disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

> 4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
>
> 5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

**V. Discussion**

As set forth above, during the pendency of her SSI application, Pate turned 18. The ALJ was therefore obliged to determine whether Pate was disabled for purposes of SSI benefits both before and after she turned 18. The ALJ made such a determination, finding with respect to the time prior to Pate attaining the age of 18 that Pate had never engaged in substantial gainful activity, that she had a seizure disorder, obesity, a learning disability and a major depressive disorder, all of which were considered severe, and that none of her impairments actually equaled the requirements of a listed impairment. With respect to whether Pate's impairments "functionally" equaled a listed impairment, the ALJ found as follows with respect to Pate's limitations in the six identified domains:

7

With respect to the claimant's ability to acquire and use information, the school records reflect that she met the criteria for special education services due to learning disabilities in Math and Science (Exhibit 1F, pages 2-3). On the Wechsler Adult Intelligence Scale-III given to the claimant in January 2006 she achieved a verbal IQ of 82, a performance IQ of 81, and a full scale IQ of 80, which placed her in the low average range of intelligence (Exhibit 4F, page 3). On the Wide Range Achievement Test the claimant scored at the 4th grade level in Arithmetic, 5th grade level in Spelling, and the high school plus level in Reading. Her academic achievement score on the WRAT-3 Arithmetic sub-test was significantly discrepant from her IQ scores, consistent with a diagnosis of a learning disability in Arithmetic and her history of placement in resource special education services in school (Exhibit 4F). The school records reflect that the claimant was expected to graduate in 2007 (Exhibit 1F, page 11).

It was the opinion of the State Agency medical consultants that the claimant had a less than marked limitation in the ability to acquire and use information (Exhibit 5F). It was the opinion of other State Agency medical consultants that the claimant had a marked limitation in the ability to acquire and use information (Exhibit 10F). However, no basis was provided for the marked limitation. It was the opinion of Dr. Bailey, who is Board-certified in Psychiatry, that the claimant had a less than marked limitation in the ability to acquire and use information. The undersigned accepts the opinion of Dr. Bailey as credible and persuasive as it is consistent with the evidence of record considered as a whole.

With respect to the claimant's ability to attend to and complete tasks, a treating note dated November 2005 reflects that concentration and attention were intact (Exhibit 2F, page 10). A report from the school indicates that the claimant had difficulty completing assignments (Exhibit 1F, page 3), but there are no reports from the school indicating that the claimant had a marked limitation in the ability to attend to and complete tasks. A psychological evaluation in January 2006 revealed that the claimant was able to successfully complete basic, simple calculations but not more complicated mathematical operations. Remote memory and immediate memory were generally within the low average range. She demonstrated a below average recall of general knowledge/information. Her intelligence was assessed to fall within the low average range of intelligence (Exhibit 4F). When examined in April 2006 she had normal cognition and intact memory (Exhibit 14F, page 13). A treating note dated October 2006 reflects that the claimant states that she was in the 12th grade and made average grades, usually in the B range. She stated that in the past she had made far worse grades but she was able to improve them. She denied symptoms of hyperactivity or inattentiveness. (Exhibit 14F).

It was the opinion of the State Agency medical consultants that the claimant had no limitation in the ability to attend to and complete tasks (Exhibit 10F). It was the

opinion of Dr. Bailey that the claimant had a less than marked limitation in the ability to attend to and complete tasks. The undersigned accepts Dr. Bailey's assessment as being more consistent with the evidence of record considered as a whole.

With respect to the claimant's ability to interact and relate with others, a report from the school indicates that the claimant had good social skills (Exhibit 1F, page 3). It was reported that her communication skills were age appropriate and commensurate with ability. The psychological evaluation report dated January 2006 indicates that the claimant reportedly had friends and had not displayed any negative conduct or behavioral problems. She stated that she did not have a driver's license and was dependent upon family for transportation (Exhibit 4F). The claimant's mother stated on one occasion that she thought that the claimant had an above average ability to make and keep friends (Exhibit 3E). Although the claimant was said to have social phobia in April 2006 (Exhibit 14F, page 14), this treating note is after her 18th birthday, and there is no evidence of this condition prior to age 18.

It was the opinion of the State Agency medical consultants that the claimant had no limitation in the ability to interact and relate with others (Exhibit 10F). It was the opinion of Dr. Bailey that the claimant had a less than marked limitation in the ability to interact and relate with others. The undersigned accepts the testimony of Dr. Bailey as credible and persuasive.

It was the opinion of the State Agency reviewing consultants and Dr. Bailey that the claimant did not have any limitation in the ability to move about and manipulate objects. The undersigned agrees with their opinions. Therefore, it is concluded that the claimant does not have a limitation in the ability to move about and manipulate objects.

With respect to the claimant's ability to care for herself, a treating note reflects that the claimant expressed a sense of pressure/obligation to care for her mother who was terminally ill, and she acknowledged that she did not utilize effective coping skills (Exhibit 2F, page 7). The psychological evaluation report dated January 2006 reflects that the claimant stated that her depression was related to her abusive (alleged physical and mental) treatment by her father and low self-esteem because of academic deficiencies and difficulties associated with her parents' conflicted divorce proceedings three years ago.

It was the opinion of the State Agency reviewing consultants that the claimant did not have any limitation in the ability to care for herself (Exhibit 10F). It was the opinion of Dr. Bailey that the claimant had a less than marked limitation in the ability to care for herself. The undersigned agrees with the opinion of Dr. Bailey.

With respect to the domain of health and physical well being, the medical records

reflect that the claimant has a history of a seizure disorder. A treating note dated August 2003 indicates that the claimant had not had a seizure since June (Exhibit 12F, page 11). There are no medical records pertaining to the alleged seizure in June. The school records reflect that the claimant was described as having a history of "mild" epilepsy seizure disorder for which she previously took Trileptal, a medication that caused drowsiness in the classroom. These records indicate that the claimant was capable of receiving instruction in Physical Education class with no modifications in spite of the seizure disorder (Exhibit 1F, page 2). When the claimant underwent a consultative examination in December 2005 her mother stated that she thought she had two to three seizures a week and more frequently when she was stressed (Exhibit 3F, page 1). There are no treating notes to support this statement. The claimant has not been followed closely for a seizure disorder. There is no evidence of anti-convulsant blood levels. A report dated December 2005 by Dr. Schulman reflects that the claimant's seizures had been controlled with Trileptal, but she stopped taking the medication because her father decided she did not need it. According to Dr. Schulman, the claimant was neurologically intact, it was not clear if she actually had pseudo seizures or true seizures, and she was to have an EEG and MRI scan of the brain (Exhibit 12F, page 10). As set out further below, the EEG was suggestive but not diagnostic of a seizure disorder, and the MRI scan of the brain was normal.

The records also reflect that the claimant was obese with a height of 67 inches and weight of 208 pounds. However, her sitting and standing balance were good, she was able to squat and hop, and she ambulated independently without any gait abnormality (Exhibit 3F).

It was the opinion of the State Agency reviewing consultants that the claimant had a less than marked limitation in the domain of health and physical well being (Exhibit 10F). Dr. Bailey testified that the claimant had a marked limitation in this domain. Considering the combination of impairments, the undersigned accepts the testimony of Dr. Bailey as being consistent with the evidence of record considered as a whole.

Since the claimant did not have marked limitations in at least two domains or extreme limitations in any domain, the undersigned finds that the claimant did not have an impairment or a combination of impairments which functionally equaled the listings. Accordingly, the undersigned concludes that the claimant was not under a "disability" as defined in the Social Security Act at any time prior to her 18th birthday on January 9, 2006 (20 C.F.R. 416.924(d)(2)).

(Tr. 18-20). As for the time after which Pate attained the age of 18, the ALJ found that Pate had a seizure disorder, obesity, a learning disability and a bipolar disorder, all of which were severe impairments, but none of which met or equaled a Listed impairment. The ALJ then concluded that

Pate had the residual functional capacity to perform a limited range of sedentary work, that there were jobs in significant numbers in the regional and national economy that Pate could perform, and that Pate was, consequently, not disabled within the meaning of the Act.

In this appeal, Pate argues in the most general of terms that substantial evidence does not support the ALJ's decision. Pate does not distinguish between the ALJ's decision that she was not disabled prior to attaining the age of 18, and the ALJ's decision that she was not disabled after she attained the age of 18. In addition, Pate points to nothing in the record that the ALJ did not mention or consider, and makes no argument that the ALJ improperly weighed the evidence. Because the ALJ's detailed and lengthy decision, both respect to the time before and after Pate turned 18, is supported by the medical evidence, and is consistent with the opinions of the medical expert who testified at the hearing, the ALJ's decision is supported by substantial evidence.

As for the only particularized complaints Pate raises in her appeal – that the ALJ misapplied section 201.00(h), and denied her due process during the administrative hearing – neither complaint has any merit. Section 201.00 gives guidance for the disability assessment of claimants who are limited to sedentary work. Section 201.00(h) applies to those claimants who are "younger individuals", those between the age of 18 and 49, and provides as follows:

> (h)(1) The term *younger* individual is used to denote an individual age 18 through 49. For individuals who are age 45-49, age is a less advantageous factor for making an adjustment to other work than for those who are age 18-44. Accordingly, a finding of "disabled" is warranted for individuals age 45-49 who:
> (I) Are restricted to sedentary work,
> (ii) Are unskilled or have no transferable skills,
> (iii) Have no past relevant work or can no longer perform past relevant work, and
> (iv) Are unable to communicate in English, or are able to speak and understand English but are unable to read or write in English.
> (2) For individuals who are under age 45, age is a more advantageous factor for making an adjustment to other work. It is usually not a significant factor in limiting

such individuals' ability to make an adjustment to other work, including an adjustment to unskilled sedentary work, even when the individuals are unable to communicate in English or are illiterate in English.

(3) Nevertheless, a decision of "disabled" may be appropriate for some individuals under age 45 (or individuals age 45-49 for whom rule 201.17 does not direct a decision of disabled) who do not have the ability to perform a full range of sedentary work. However, the inability to perform a full range of sedentary work does not necessarily equate with a finding of "disabled." Whether an individual will be able to make an adjustment to other work requires an adjudicative assessment of factors such as the type and extent of the individual's limitations or restrictions and the extent of the erosion of the occupational base. It requires an individualized determination that considers the impact of the limitations or restrictions on the number of sedentary, unskilled occupations or the total number of jobs to which the individual may be able to adjust, considering his or her age, education and work experience, including any transferable skills or education providing for direct entry into skilled work.

Pate maintains, as follows, that the ALJ failed to make the particularized findings required by section 201.00(h)(3):

> Plaintiff submits that the Commissioner failed to make these detailed findings in the decision with sufficient specificity and in sufficient detail to satisfy the requirements of this section. Specifically, there was (1) no detailed discussion of the type and extent of the Plaintiff's limitations and its extent of erosion of the occupational base; (2) no individualized determination considering the impact of the limitations or restrictions on the number of the sedentary, unskilled occupations; (3) nor a finding of the total number of jobs to which the Plaintiff would be willing to adjust, considering her age, education and work experience, including any transferable skills or education providing for direct entry into skilled work. A failure to make such a detailed inquiry and findings constitutes a failure to comport with relevant legal standards. Instead, the Commissioner asked a hypothetical question and made the inquiry for a case in which the Plaintiff could perform a full range of sedentary work (Tr. 295, 296). The hypothetical did not include such inquiries, and the findings of the Commissioner omitted a discussion of these crucial matters. It is imperative that the ALJ make these inquiries, especially when the Plaintiff has established that she has a seizure disorder, obesity, a learning disability, and a major depressive disorder – all as found by the Commissioner in his decision.

(Document No. 12 at 8-9).

The ALJ found, in his written decision, that Pate could perform less than a full range of sedentary work:

> . . . it is concluded that he claimant can lift and carry 5 pounds frequently and 10 pounds occasionally, sit 6 hours in an 8 hour workday, and stand and walk 2 hours of a workday. She has a good ability (ability to function in this area is satisfactory) to follow work rules, relate to coworkers, function independently, and understand, remember and carry out simple job instructions. She has a fair ability (ability to function in this area is somewhat affected, that is below average ability) to deal with the public, use judgment, cooperate with supervisors, deal with work pressures, maintain attention and concentration, understand, remember and carry out complex and detailed instructions, maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability.

(Tr. 24-25). The ALJ also found, based on his questioning of a vocational expert at the hearing,[1] that

---

[1] The ALJ questioned the vocational expert as follows:

ALJ: Any - - well, okay. Assume an individual of the age of 18 to 19 years, who has an 11th grade education in special education, and who has no working experience, but has the residual functional capacity to perform work at the sedentary level of exertion, that is to lift five pounds frequently and ten pounds occasionally, with mild to moderate pain and discomfort. And while performing at that level of exertion, is suffering from some mild to moderate emotional disorder which is manifested in the following manner. The ability to follow work rules, relate to coworkers, and to function independently are all categorized as good. Good is here defined as an ability to function in an area that is satisfactory. The ability to deal with the public, use judgment, cooperate with supervisors, deal with work pressures, and maintain attention and concentration are all categorized as fair, fair being defined as an ability to function in an area that is somewhat affected, that is it's below average ability. . . . . The ability to understand, remember, to carry out complex job instructions is fair, as is the ability to understand, remember, carry out detailed but not complex job instructions. The ability to understand, remember, carry out simple job instructions is good. The ability to maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and to demonstrate reliability are all categorized as fair. Do you have that total hypothetical?
VE: Yes, sir, I believe I do.
ALJ: Anything you want me to repeat?
VE: No, sir.
ALJ: Could such individual perform any work?
VE: I believe there would be some unskilled jobs, Your Honor, at the sedentary level. Jobs such as jewelry preparer, we have approximately 650 in the region, 130,000 nationally.
ALJ: 600 you said?

13

Pate could, despite her ability to engage in only limited sedentary work, perform sedentary unskilled jobs such as jewelry preparer, sorter, and optical goods worker, all of which exist in significant numbers in the regional and national economy. The record shows, despite Pate's arguments, that the ALJ fully considered Pate's physical and mental limitations in determining her residual functional capacity. In addition, the record shows that the ALJ took into consideration the lack of any transferrable skills, Pate's age and education, and the erosion in the sedentary job base given Pate's inability to perform a full range of sedentary work. Upon this record, the ALJ sufficiently followed the requirements of section 201.00(h) in determining that Pate was not disabled.

As for Pate's second claim, that the ALJ limited her ability to present testimony at the hearing, the record shows that Pate's right to due process was not infringed. Social security claimants are entitled, as a matter of due process, to a fair hearing before an impartial and unbiased hearing officer. *Ventura v. Shalala*, 55 F.3d 900, 901-02 (3d Cir. 1995). The right to a fair hearing encompasses the right to present evidence and cross-examine witnesses. *See Lidy v. Sullivan*, 911 F.2d 1075, 1077 (5th Cir. 1990).

Here, the record shows that the ALJ did limit the testimony Pate's attorney sought to elicit from Pate during the hearing. The limits imposed by the ALJ, however, were wholly reasonable. In addition, no objection was made to the limits imposed by the ALJ. The record shows that Pate's

---

VE: Yes, sir, 650 in the region.
ALJ: Right.
VE: And 130,000 nationally. We have a sorter. We have approximately 800 in the region, 135,000 nationally. And we have optical goods worker with approximately 600 in the region, and 135,000 nationally. These are all sedentary, unskilled - -

(Tr. 295-297).

attorney questioned her at some length about her impairments, limitations, and difficulties in school. It was only after Pate's attorney questioned Pate cumulatively about the school-related job that she had that the ALJ instructed counsel to "move along" and later limited counsel to "another two minutes." (Tr. 264-65, 270). In addition, the ALJ's limit on counsel's questioning of the medical expert to hypotheticals was proper given that the medical expert was not in a position to judge or opine on the credibility of the claimant.[2] In all, the record shows that counsel was able to elicit testimony from Pate and her mother, and was able to question both the medical expert and the vocational expert. Pate has not alleged or shown that counsel was unable to present certain testimony or evidence or that the ALJ's consideration of Pate's impairments was hindered by counsel's inability

---

[2] The ALJ's ruled as follows regarding the form of the questions that could asked of the medical expert:

> Q [by Pate's attorney]: . . . . So if you took the testimony here today as to the extent, the number of and the duration of seizures that was testified here today –
> ALJ: No, no, no, that's not –
> ATTY: I think I have a right to ask the question.
> ALJ: You have a right to ask the question but not in that form, all right?
> ATTY: Okay.
> ALJ: He's not here to make any comment about this claimant's credibility, okay? He's here specifically to address the facts as they appear in the record as far as the physical and mental aspects are concerned.
> ATTY: And what I was trying to ask was the – a hypothetical question –
> ALJ: Well then ask it hypothetically.
> ATTY: Okay.
> ALJ: Don't start it off with this, this person, you know.
> ATTY: Okay.
> ALJ: You're addressing this question –
> ATTY: Okay.
> ALJ: – to the doctor as it affects this lady. That's not the way to do it here.
> ATTY: Okay.
> ALJ: So ask a hypothetical –

(Tr. 289-90).

to question the claimant at more length. Any limits imposed by the ALJ were, upon this record, reasonable, and did not infringe upon Pate's right to due process.

### VI.     Conclusion and Order

Based on the foregoing, and the conclusion that substantial evidence supports the ALJ's decision and that the error correctly applied the law, the Court

ORDERS that Defendant's Motion for Summary Judgment (Document No. 10) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 11) is DENIED, and the decision of the Commissioner of the Social Security Administration is AFFIRMED.

Signed at Houston, Texas, this 8th day of December, 2009.

Frances H. Stacy
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARA ALYSE PATE, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. H-08-249 |
| § | |
| MICHAEL ASTRUE, COMMISSIONER OF § | |
| THE SOCIAL SECURITY § | |
| ADMINISTRATION, § | |
| § | |
| Defendant. § | |

# **FINAL JUDGMENT**

For the reasons set forth in the Memorandum and Order entered on this date, it is

ORDERED and ADJUDGED that Defendant's Motion for Summary Judgment (Document No. 10) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 11) is DENIED, and the decision of the Commissioner of Social Security is AFFIRMED.

This is a FINAL JUDGMENT.

The Clerk will enter this Order and send copies to all parties of record.

Signed at Houston, Texas, this ____ day of _____, 2009.

                                    _____
                                    FRANCES H. STACY
                                    UNITED STATES MAGISTRATE JUDGE